UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

WILLIAM ROBERTS,
                 Plaintiff,

v.                                            9:09-CV-750
                                                 (LEK/ATB)
BRIAN FISCHER, *et al.,*

                Defendants.

---

WILLIAM ROBERTS, Plaintiff *pro se*
CHRISTINA L. ROBERTS-RYBA, ESQ.
Assistant Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

      This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).[1]

## I.   **Facts and Contentions**

      Plaintiff alleges that soon after arriving at the Watertown Correctional Facility ("Watertown"), he was in an orientation where he asked about the procedure for smoking cigarettes. (Compl. ¶ 18). Plaintiff had a disagreement with the corrections officer when plaintiff asked to go out for a cigarette, and plaintiff was ordered back to his cube. (Compl. ¶¶ 19, 20). Plaintiff alleges that

---

[1] The case was originally referred to the Honorable Gustave J. Di Bianco and was assigned to me upon Judge Di Bianco's retirement on January 4, 2010.

soon after he returned to his cube, two other corrections officers threw plaintiff against the wall, handcuffed him, and escorted him to the Special Housing Unit ("SHU"). (Compl. ¶¶ 23–25).

Plaintiff alleges that while he was in the SHU, the corrections officers "slammed plaintiff face first into the walls" and "knee[d] plaintiff in his thigh with such force that it caused plaintiff excruciating pain and his leg to give out." (Compl. ¶ 27). Plaintiff alleges the assault continued after he had fallen to the floor, and he suffered "massive swelling, lacerations, bruises, and abrasions to his face[,] head, legs, thigh[,] arms, wrist, sides[,] torso, shoulders[,] and back." (Compl. ¶ 28). Afterward, plaintiff requested to see a doctor. (Compl. ¶ 32). Hours later, a nurse showed up and told plaintiff that she saw nothing wrong. (Compl. ¶ 33). Plaintiff explained to the nurse that he had been assaulted and asked her to file an injury report. (Compl. ¶ 36). Plaintiff told the nurse that he was unable to stand on his leg due to the pain, but received no treatment. (Compl. ¶ 36, 38).

The nurse later brought him eye drops and his inhaler, but plaintiff alleges he received nothing throughout the night for his injuries, despite continual requests to see a doctor. (Compl. ¶ 39). The following day, April 25, 2009, plaintiff received a misbehavior report, but no medication or treatment for his injuries. (Compl. ¶ 40–41). On April 26, 2009, plaintiff received two ibuprofen from a different nurse. (Compl. ¶ 42).

On April 27, 2009, a third nurse gave plaintiff two ibuprofen and informed him that he was on a "draft list and scheduled to be transferred any day." (Compl. ¶ 44). That same day, plaintiff was found guilty at a Tier II disciplinary hearing, where he claims that he did not mention the assault because a corrections officer told plaintiff that if he would "keep his [mouth] closed he may be transferred out of [Watertown] earlier than he thinks, if not[,] we may hold you here longer." (Compl. ¶ 45). Plaintiff claims that this made him fear for his safety. A corrections officer told plaintiff after the hearing that "it was a good thing [plaintiff] did not [say] anything stupit, [sic] . . . because he was being transferred." (Compl. ¶ 46).

Upon arrival at Gouverneur Correctional Facility ("Gouverneur") on April 27, 2009, plaintiff informed the intake nurse of the assault, who "gave plaintiff a hand full [sic] of ibuprofens [sic] and scheduled him to see the doctor. (Compl. ¶ 48). Plaintiff filed a grievance regarding the assault on April 28, 2009. (Compl. ¶ 49). Plaintiff went to emergency sick call on April 29, 2009, injury reports were made, pictures were taken of plaintiff's injuries, and plaintiff received a walking cane until he could see a doctor. (Compl. ¶¶ 50–53).

On April 30, 2009, plaintiff saw the facility doctor, who had plaintiff's leg x-rayed. (Compl. ¶ 54). Some "irregularities" with plaintiff's right femur were detected, and plaintiff was sent to Edward John Noble Hospital on May 8, 2009 for further tests. (Compl. ¶¶ 54, 58). The doctor discovered the plaintiff's femur

3

had been fractured, and a sliver of bone was stuck in the muscle of his right thigh. (Compl. ¶ 58). Plaintiff saw an orthopedic doctor on May 13, 2009, who determined plaintiff would need therapy for his leg. (Compl. ¶ 61).

Plaintiff asserts that the corrections officers used excessive force when they assaulted plaintiff in the Watertown SHU; the staff at Watertown was deliberately indifferent to his serious medical needs at Watertown when they denied him medical care for his injuries; and plaintiff's due process rights were violated because his misbehavior report, disciplinary hearing, and grievances were all inadequately investigated. (Compl. ¶¶ 63–69).

## II.   Judgment on the Pleadings

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See* Fed. R. Civ. P. 12(b), 12(c) and 12(h)(2). The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6). *Id.*

Defendants move to dismiss the complaint as to defendant Brian Fischer, arguing he was not personally involved in the alleged constitutional deprivations. (Dkt. No. 27). To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, _ U.S. _, 129 S. Ct. 1937, 1949 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

### III.  Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a § 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In this case, plaintiff does not allege that he ever had any contact with Commissioner Fischer. Thus, plaintiff may show personal involvement if defendant Fischer failed to remedy the violation after learning of it through a report or appeal, or if he were grossly negligent in managing subordinates who caused the violation.

Plaintiff alleges he was in Watertown for a total of three days, from April 24–27, 2009. (Compl. ¶ 47). Plaintiff alleges that defendants Towles, Larkin and Jewson "have repeatedly engaged in excessive force against inmates in the past," but provides no factual basis for this claim. (Compl. ¶ 31). Plaintiff's conclusory allegation that defendant Fischer's "failure . . . to take . . . action to curb the known pattern of physical abuse of inmates" at Watertown by defendants is not enough to establish that defendant Fischer was aware of any history of excessive force by defendants at Watertown. *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) (plaintiff must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged).

In this case, plaintiff has absolutely no factual basis for his claim that these defendants repeatedly engaged in excessive force against inmates in the past. His three-day stay in Watertown Correctional Facility could not have afforded him this knowledge. Because it is unclear how he came to this conclusion, he cannot support a claim that defendant Fischer knew about these alleged instances of

7

excessive force. Thus, the complaint has not adequately alleged personal involvement of defendant Fischer in the excessive force claim, based either upon "gross negligence" in managing subordinates, or upon creating a "policy or custom," pursuant to which the excessive force occurred.

### A. Plaintiff's Grievances

Plaintiff alleges that he "exhausted his remedies" as to his Watertown and Gouverneur grievances by appealing them to each facility's respective superintendent and then to defendant Fischer. (Compl. ¶¶ 15, 56–57). He alleges that defendant Fischer failed to fairly and adequately review plaintiff's grievances, apparently based on the unfavorable dispositions. *Id.* Plaintiff may be trying to assert that defendant Fischer is personally involved because he failed to remedy the wrong after learning about it through a report or appeal.

It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement. *Smart v. Goord*, 441 F. Supp. 2d 631, 642–643 (S.D.N.Y. 2006). The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation. *Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007). Some courts have held, however, that if the supervisory official acts ***personally*** in denying a grievance at various stages of the grievance process, he may be sufficiently involved in failing to remedy the situation. *See Atkinson v. Selsky*, 03

Civ. 7759, 2004 U.S. Dist. LEXIS 20560, *2–4 (S.D.N.Y. Oct. 15, 2004) (denial of grievance sufficient for personal involvement). *See also Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (finding sufficient personal involvement).

New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. CORRECT. LAW § 139; N.Y. COMP. CODES R. & REGS. ("NYCRR") tit. 7 §§ 701.1 *et seq.* The regular Inmate Grievance Program ("IGP") consists of a three-tiered process. *Hemphill v. New York*, 380 F.3d 680, 682. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). *Id.*, 7 NYCRR § 701.5(b).[2] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.*, 7 NYCRR § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.*, 7 NYCRR § 701.5(d). The CORC functions on behalf of the commissioner and under his authority, but he is not a member of the CORC. 7 NYCRR §§ 701.5(d)(2).

As can be seen from the above regulations, defendant Fischer is not involved in the grievance review process. Thus, plaintiff has failed to establish that defendant Fischer had any knowledge of, or involvement with, the review of plaintiff's grievances, sufficient to establish personal involvement in the allegedly

---

[2] The court notes that the sections governing inmate grievances were re-numbered in 2006. This court will refer to the current numbering which is different than the numbers that appear in *Hemphill*.

unconstitutional conduct underlying the grievances. The court would also point out that for personal involvement to be established based upon the supervisory official learning of the constitutional violation through a "report or appeal," the supervisor must be in a position to "remedy the wrong." *See Harnett v. Bar*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (stating that the appropriate guiding principle for determining personal responsibility is determining whether the supervisory official was presented with an "ongoing" violation that he or she could remedy directly). In this case, the assault was in the past, and plaintiff had already been moved to another institution. There was nothing that defendant Fischer could "remedy" for plaintiff even if Fischer had been involved in the grievance review. Thus, plaintiff has not shown the personal involvement of defendant Fischer based upon his failure to "remedy the wrong."

### B.    Misbehavior Reports and Disciplinary Proceedings

As to misbehavior reports, New York prison inmates are subject to three levels of disciplinary hearings for violations of prison rules. *Porter v. Coughlin*, 421 F.3d 141, 142 n.1 (2d Cir. 2005) (citing *inter alia* 7 NYCRR §§ 270.2 (Standards of Inmate Behavior); 270.3 (Tiers of Disciplinary Hearings), 252.5 (Tier I dispositions); 253.7 (Tier II dispositions) and 254.7 (Tier III dispositions)). Appeals of Tier I hearings and Tier II hearings go to the superintendent or his designee. 7 NYCRR §§ 252.6, 253.8. Appeals of Tier III hearings go to the commissioner or his designee. 7 NYCRR § 254.8.

Plaintiff alleges that he attended his Tier II hearing on April 17, 2009. (Comp. ¶ 45). If plaintiff appealed the ruling of his Tier II hearing, it would have gone to the Superintendent, not defendant Fischer. *See* 7 NYCRR § 253.8. Defendant Fischer would never be involved in the review of Tier II disciplinary proceedings, thus, he could not be involved in any alleged denial of due process at that hearing.[3] In any event, plaintiff specifically states that he did not mention the assault during his disciplinary hearing. (Compl. ¶ 45).

Defendant Fischer is the Commissioner of DOCS, who delegates the day-to-day operations of the various correctional facilities to his staff. Without more, plaintiff has failed to establish that defendant Fischer was even aware of the misbehavior report or disciplinary hearing. Plaintiff's conclusory allegations that defendant "failed" or "refused" to "adequately" or "fairly" investigate or review plaintiff's grievances or disciplinary report is insufficient to establish personal involvement in any due process violations. (*See* Compl. ¶¶ 15, 64, 68).

**C. Failure to Investigate**

Plaintiff claims that defendant Fischer failed to properly investigate his grievances. The failure to investigate, as stated above, does not confer personal responsibility on the supervisory official. To the extent that plaintiff attempts to assert a separate constitutional claim of "failure to investigate," the law is clear,

---

[3] The court must point out that it has been held that there is no protected liberty interest in a Tier II hearing. *See Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006).

however, that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (citing *Nieves v. Gonzalez*, No. 05 Civ. 17, 2006 U.S. Dist. LEXIS 24302, *11–13 (W.D.N.Y. Mar. 2, 2006); *Longi v. County of Suffolk*, No. CV-02-5821, 2008 U.S. Dist. LEXIS 25468, *22–23 (E.D.N.Y. Mar. 27, 2008)). In order for a constitutional violation to have occurred, the investigation itself must have resulted in a deprivation of a constitutional right. *Faison v. Hash*, 03-CV-6475P, 2004 U.S. Dist. LEXIS 29151, *6 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York*, 1996 U.S. Dist. LEXIS 16417, *6 (S.D.N.Y. Nov. 7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved)).

 Plaintiff had no constitutional right to any investigation, and he certainly had no right to a particular outcome. Plaintiff's claims against defendant Fischer may be dismissed for lack of personal involvement, and to the extent that plaintiff attempt to assert a separate claim of failure to investigate his complaints, that claim may be dismissed for failure to state a constitutional claim. The court is recommending dismissal against defendant Fischer in this case, and the court

doubts that, based on the facts stated in the complaint, plaintiff will be able to amend his complaint to state a claim against defendant Fischer.  However, given the liberality with which *pro se* plaintiffs must be treated, the court will recommend a dismissal without prejudice.  *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for judgment on the pleadings (Dkt. No. 27) be **GRANTED**, and the complaint **DISMISSED WITHOUT PREJUDICE** as to defendant Fischer.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: June 28, 2010

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge